BARRY, Judge.
The defendant was convicted of forcible rape. La.R.S. 14:42.1. He was sentenced to thirty (30) years at hard labor, the first two years without benefit of parole, probation or suspension of sentence. Court costs of $74 were imposed with an additional thirty days in default thereof.
FACTS AND TESTIMONY
On June 16, 1984 around 3:00 a.m. Janice Chandler and her husband, who lived in the Lafitte Housing Project, walked home from a lounge. Her husband went upstairs to get money and she started to walk toward a restaurant a few blocks away. Near Galvez and Orleans Streets she was told to stop, she turned around and saw a man (she did not know but whom she later identified as the defendant) with a gun pointed at her head. He made her walk about two blocks to a back hallway in a project building and took her watch, keys, clutch purse and purse. He made her remove her clothes and forced her to have oral, vaginal and anal sex. She said the gun was always pointed at her. When a car drove up she told him it was her aunt and he said: “Bitch, I’m going to blow you up.” He made her get down on the floor, then fled. Mrs. Chandler ran out and called home. Her sister contacted the police and she was taken to Charity Hospital.
Later that same day about 4:00 p.m., as she and her husband were re-tracing their route, she saw the alleged rapist and followed him to an apartment building. She contacted the police and after midnight on June 18, 1984 Detectives Rodney Bailey and Donald Hoyt responded and she direct *243 ed them to the building. After knocking on several doors the defendant’s residence was located and he was arrested.
On August 3, 1984 Detective Bailey conducted a photographic line-up at Mrs. Chandler’s home and she identified the defendant.
Dr. Terry Noah examined Mrs. Chandler and found fresh bruises on her back, abrasions and contusions and a tear in her rectum consistent with a penetrating type injury. He concluded that sexual intercourse also occurred. Dr. Noah used a flourescent light which indicated the presence of semen in her pubic hair. According to Patricia Daniels, the New Orleans Coroner’s Office medical technologist, and Daniel Waguespack, the NOPD criminologist, tests showed the defendant was a non-se-cretor. A vaginal swab tested positive for seminal fluid, but oral and anal swabs did not.
The defendant denied involvement and testified he was home all night on June 5, 1984. His live-in girlfriend of seven years, Betty Montrell, and his mother testified that the defendant never left the apartment that night. The defendant said he knew Mr. Chandler and had seen Mrs. Chandler and her husband at several social functions before the alleged offense.
APPEAL PROCEEDINGS
Defense counsel filed one assignment of error and the defendant filed two pro se briefs which assign five errors. Immediately prior to the originally scheduled oral argument defense counsel filed a motion to remand the case for a hearing on a motion for a new trial which had been filed in the district court that day. The motion claimed the defendant’s doctor had information about a vascular condition the defendant had which caused him to be impotent. We remanded, an evidentiary hearing was held, and a new trial was denied. The defendant appeals that denial.
TESTIMONY AT THE MOTION FOR A NEW TRIAL HEARING
Dr. Daniel Rush, an expert in vascular surgery, testified he first examined the defendant in January, 1983. He complained of an inability to walk well and maintain an erection. A urigenital vascular study dated January 20, 1983 showed the percentages of blood flow in the penis to be 92% and 93%, possibly adequate to sexually function. An arteriogram indicated an obstruction of his left illiac artery. Dr. Rush performed an aorta bipheneral bypass by using a knitted dacron graft.
During surgery Dr. Rush found the defendant had a tremendous inflammation of the distal aorta, necrotising granulomatous aortitis, due to an auto-immune type of vasculitis. The graft caused the aortic blood flow to bypass the pelvic region to deliver blood to the legs. That procedure often interferes with sexual function. After surgery the urigenital studies indicated relatively unchanged penile pressures. The defendant progressed for months after surgery and said his sexual ability had improved.
On May 20, 1983 the defendant again complained about his left leg and his inability to maintain an erection. The urigenital study indicated the right dorsal penile artery had a “0” blood flow and the left was at 75%. Those figures indicated he could not have an erection. Another arteriogram indicated the inflammatory disease in the left leg had progressed to the point that the vessels had narrowed. Blood flow to the pelvis had diminished. No further surgery was indicated and Dr. Rush did not see the defendant until May, 1986.
In early summer, 1984 the defendant’s girlfriend informed Dr. Rush about the rape/trial and asked for help. Dr. Rush indicated he could be of assistance and asked that the defendant’s lawyer call him. The lawyer never called. In 1986 Dr. Rush saw the defendant pursuant to his request for a follow-up. The defendant had the same complaints as in 1983. A study indicated the bypass was intact, but the pressure in the left leg was still only 70% and there were no pulses. There were no changes during the two years.
Dr. Rush testified that the defendant did not complain about sexual dysfunction in *244 1983. He said patients are reticent to discuss that problem. Only after Dr. Rush questioned the defendant did the sexual dysfunction come into focus.
ANALYSIS
La.C.Cr.P. Art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudical error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The motion for a new trial alleged that Dr. Rush contacted appellate counsel on July 6, 1987 with information that the defendant could not have an erection at the time of the alleged crime. The trial court denied the motion because it concluded that the sexual dysfunction was not newly discovered evidence since the defendant was aware of the problem.
Defense counsel conceded at the hearing that the defendant was aware of his problem, but said the defendant felt his alibi was sufficient.
Trial counsel was obviously not aware of the sexual dysfunction. Appellate counsel argues that a new trial should have been granted because of Art. 851(5), that the ends of justice would be served although the defendant may not be entitled to a new trial as a matter of strict legal right. Although counsel concedes the untimeliness of the motion (whether arguing La.C.Cr.P. Art. 851(3) or (5)), he points out that several retained and O.I.D.P. attorneys had been on the case.
We are persuaded that a new trial should have been granted under these extraordinary circumstances. Although the motion was untimely, it should be considered to ensure that justice is served.
The absence of Dr. Rush’s expert testimony concerning the defendant’s impotence greatly prejudiced the defense. There is no scientific evidence to connect the defendant to the rape.
We reverse the denial of the new trial motion, pretermit discussion of the assignments, and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.